

ORIGINAL



# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>JONATHAN MICHEL<br><br>       Debtor. | Case No. LA 06-16673 TD<br><br>Adv. No. LA 07-01204 TD<br><br>Chapter 7<br><br>MEMORANDUM OF DECISION |
| PETER MARK,<br><br>       Plaintiff<br><br>     v.<br><br>JONATHAN MICHEL,<br><br>       Defendant. | DATE:   July 12, 2007<br>TIME:   10:00 a.m.<br>PLACE:  Courtroom 1345 |

This matter was tried before me on July 12, 2007. Andrew Smyth of Smyth Law Offices appeared for plaintiff Peter Mark, and defendant Jonathan Michel appeared pro se. Upon consideration of the pleadings, evidence and closing argument, the

following are my findings of fact and conclusions of law.

## INTRODUCTION

Mark brought and prosecuted this action under 11 U.S.C. § 523(a)(2)(A) requesting an exception to discharge of a debt created through his investment in a radio show titled *BUZZ L.A.*, which Michel had created and was producing under the name Privilege Media Group International, Inc. ("PMG").

Mark and Michel met in 2000 and initially developed a personal relationship. In that connection, Michel told Mark about Michel's personal background and business activities and made various statements of fact about PMG and some of its business activities. According to Mark, these conversations included oral statements that Michel was the president and CEO of a corporation in good standing named PMG, that PMG had a staff and office in Beverly Hills, and that Michel had received an MBA from Harvard and owned condos in Boston and Los Angeles, although the discussions took place at Michel's home, never in a PMG business office in Beverly Hills.

Later, on March 17, 2001, Michel proposed a *BUZZ L.A.* business deal to Mark. During their business discussion, Mark says he asked Michel for the identity of other investors, accounting statements, and proof of PMG's corporate status. Michel did not provide any such information or documentation. Michel testified that he furnished to Mark copies of the contract with the radio station and a budget totaling $250,000 for the 26-episode *BUZZ L.A.* proposal. The discussion resulted in a "Deal Memo" signed April 11, 2001 between Michel as "President & CEO" of PMG and Mark as "Investor." (Plaintiff's Exhibit 1). The Deal Memo stated that Mark would invest $10,000 in the production of 26 *BUZZ L.A.* radio episodes, in return for which (1) Mark would receive 5% of gross sales and advertising revenue of the first 26 episodes and (2) PMG personally guaranteed a minimum return of $10,000 on "the completion of the first 26 episodes or within six months from May 12, 2001, whichever shall come first."

2

(Plaintiff's Exhibit 1). Mark made his investment, about $10,000, though he did not receive any of the investor, financial or corporate status information he had requested from Michel.

On May 10, 2001, again at Michel's home, Michel informed Mark that an additional $3,000 was needed for the radio show, which was to be  broadcast by Infinity Broadcasting Corporation ("Infinity") on FM radio station KLSX. (Defendant's Exhibit B). Despite being unsure at the time of the soundness of his initial $10,000 investment, Mark testified that out of concern that *BUZZ L.A.* would not be aired, he agreed to invest the additional $3,000. Mark's money was given directly to Jeffry Martini, the Director of Sponsored Programs at Infinity, although there was a conflict in the testimony as to whether Mark or Michel delivered the payment to Martini. (Defendant's Exhibit B).

Mark also testified that Michel did not tell him that PMG lost its Nevada corporate status in 1998 or that had PMG closed its Beverly Hills office in 1998. Michel's testimony generally contradicts Mark's. Apparently, all negotiations between the parties took place in Michel's home.

Ultimately, only four episodes of *BUZZ L.A.* were produced and aired on KLSX. At that point, the funds from Mark's investment had been depleted and other means of financing a 26-episode project did not materialize.

The shortfall in investor funds resulted in a deteriorating the relationship between Michel and Mark. Michel tried to find other investors to sustain the project and repay Mark, but was unable to. While between $800 and $900 was raised from advertising revenue through *BUZZ L.A.*, Mark did not receive his agreed percentage return. Apparently, Michel spent the money in his efforts to sustain the *BUZZ L.A.* project, which ended in failure after 4 episodes, including later lawsuits over unpaid costs of the project.

1  Mark received neither his percentage of the gross sales and advertising

2  revenue nor the guaranteed return of his $10,000 investment.

3  Essentially, the evidence here shows that Mark's contractual rights were

4  enforceable, pre-bankruptcy, against Michel personally. This is for the reason that

5  Michel, in effect, entered into the contract with Mark as a sole proprietor who was

6  operating under the PMG name. PMG, in effect, was a fictitious name in light of the

7  1998 suspension of PMG's corporate franchise.

8  While the of affairs leads to some confusion, I conclude that nothing in the

9  evidence gave Mark any reasonable or justifiable basis to assume anything about the

10  financial ability of either Michel or PMG to sustain a 26-episode *BUZZ L.A.* project or

11  to assume that the funds were available from any source to sustain the project.

12  I find and conclude that Michel's testimony was more persuasive as to the

13  material facts of this dispute. I also find that Mark failed to prove by a preponderance

14  that Michel misrepresented any material fact necessary to sustain Mark's claim of

15  fraud sufficient for nondischargeability under 11 U.S.C. § 523(a)(2)(A).

16  **DISCUSSION**

17  According to 11 U.S.C. § 523(a)(2)(A), a discharge does not "discharge an

18  individual debtor from any debt for money . . . to the extent obtained by false

19  pretenses, a false representation, or actual fraud." The policy of § 523(a)(2)(A) is to

20  ensure that "an honest, but unfortunate debtor obtains a fresh start, while a dishonest

21  debtor does not benefit from his wrongdoing." Citibank v. Eashai (In re Eashai), 87

22  F.3d 1082, 1086 (9th Cir. 1996). To make a prima facie case under this section, the

23  plaintiff must establish all of the following:

24  1. a misrepresentation of fact by the debtor,

25  2. that the debtor knew at the time to be false,

26  3. that the debtor made with the intention of deceiving the creditor,

4

4. upon which the creditor justifiably relied, and

5. that was proximate cause of the damage to the creditor.

Cossu v. Jefferson Pilot Sec. Corp. (In re Cossu), 410 F.3d 591, 596 (9th Cir. 2005)

(citing In re Britton, 950 F.2d 602, 604 (9th Cir. 1991)). Each of these factors must be

proven by the plaintiff by a preponderance of the evidence. American Express Travel

Related Servs. Co. v. Hashemi (In re Hashemi),104 F.3d 1122, 1125 (9th Cir. 1996)

(citing Grogan v. Garner, 498 U.S. 279, 291 (1991)).

**1. Misrepresentation**. The misrepresentation of fact by the debtor to the

creditor must be material. Berr v. FDIC (In re Berr), 172 B.R. 299, 309 (B.A.P. 9th Cir.

1994) (holding misrepresentations on the debtor's credit application were immaterial

as they did not affect the debtor's credit worthiness).  A "fact is material if there is a

substantial likelihood that its disclosure would have been considered significant by a

reasonable investor." Basic v. Levinson, 485 U.S. 224, 224 (1988).  "In order for a

representation regarding future performance to be actionable under § 523(a)(2)(A), a

debtor must lack an intent to perform when the promise was made." Donaldson v.

Hayes (In re Hayes), 315 B.R. 579, 587 (Bankr. C.D. Cal. 2004) (citing Anastas v. Am.

Sav. Bank (In re Anastas), 94 F.3d 1280, 1285 (9th Cir. 1996)).

I do not find sufficient evidence here to sustain Mark's claim that Michel

misrepresented the financial ability of either PMG or Michel personally to sustain the

BUZZ L.A. project or to repay Mark. Similarly, I conclude that, on balance, Mark's

evidence is insufficient to sustain a claim that Michel, either individually or through

PMG, made any promise to Mark that Michel did not intend to perform at the time he

made the promise. Rather, the evidence proves more conclusively that Mark's

investment of funds in the BUZZ L.A. project was based on an informal, largely oral,

non-detailed understanding between Mark and Michel that did not address adequately

where the necessary funds for the 26-episode project were to come from or whether

5

Michel was able to repay Mark's investment from available assets in the event the *BUZZ L.A.* project failed. The "deal" clearly was highly speculative and poorly thought out financially on Mark's part. The project failed perhaps due to the lack of adequate funding. In the end, however, and at best, Mark's evidence proves no more than breach of contract by Michel, not fraud. There is no convincing evidence Michel misrepresented his financial condition. Breach of contract is insufficient to support a judgment of nondischargeability.

Mark presented no evidence or testimony that suggested at the time of the agreement that PMG or Michel did not intend to perform. See Donaldson, 315 B.R. at 587. Furthermore, while Mark's testimony concerning PMG's corporate status and office with a staff in Beverly Hills may have created an image of financial ability,  such representations, even if proven, do not support Mark's claim here. There is no evidence that Michel misappropriated Mark's investment, or that the four episodes produced deviated from Mark's reasonable expectations of the *BUZZ L.A.* program. Any corporate representations regarding PMG, even if inaccurate, were not material to Mark's investment decision. To the contrary, there were no material misrepresentations regarding *BUZZ L.A.*, the project that Mark  invested in.

**2. Proximate cause of damages.** Any recovery for fraud under 11 U.S.C. § 523(a)(2)(A) requires proof that the plaintiff suffered damages as a proximate result of material misrepresentations. Here, Mark presented evidence to show a variety of his subjective understandings concerning Michel and PMG. Mark's understanding may have resulted from Michel's puffing, but Michel did not make any financial representation or promise to Mark than repayment. The evidence does not support a finding or conclusion that Michel misrepresented any material fact relating to the *BUZZ L.A.* project. Mark failed to prove by a preponderance of the evidence that any material misrepresentation *BUZZ L.A.* was the proximate result of Mark's loss. In

6

1   actuality, Mark lost his money due to (a) the failure of *BUZZ L.A.* and (b) PMG's and/or

2   Michel's breach of contract.

3                                    **CONCLUSION**

4       Mark has failed to prove any basis for nondischargeability under 11 U.S.C. §

5   523(a)(2)(A) of any debt of Michel to Mark.

6

7       SO ORDERED.

8       DATED:  7/30/07

9

10                          THOMAS B. DONOVAN
                            United States Bankruptcy Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

                                      7

1     NOTICE OF ENTRY OF JUDGMENT OR ORDER
      AND CERTIFICATE OF MAILING

2

3   TO ALL PARTIES IN INTEREST LISTED BELOW:

4   1.    You are hereby notified that a judgment or order entitled:

5   **MEMORANDUM OF DECISION**

6   was entered on ___7/31/07___.

7   2.    I hereby certify that I mailed a true copy of the order or judgment to the persons

8   and entities listed below on ___7/31/07___.

9

10  Defendant
    Jonathan Michel
    4638 Blackrock Ave

11  La Verne, CA 91750

12  Plaintiff
    Peter Mark

13  P.O. Box 3606
    Covina, CA 91722

14
    Plaintiff's Attorney

15  Andrew Edward Smyth
    Smyth Law Office

16  4929 Wilshire Blvd Ste 605
    Los Angeles, CA 90010

17
    Chapter 7 Trustee

18  Alfred H. Siegel
    Siegel, et al.

19  15233 Ventura Blvd 9th Floor
    Sherman Oaks, CA 91403

20
    U.S. Trustee

21  Office of the U.S. Trustee
    Ernst & Young Plaza

22  725 S. Figueroa St., 26th Floor
    Los Angeles, CA 90017

23

24

25  Dated:    7/31/07

26                                         _____
                                              Clerk

                            8